Good morning, Your Honors. May it please the Court, Counsel. I am Krista Hart. I represent Mr. Hawkins. My goal is to reserve three minutes for rebuttal argument. And first, there are two cases on calendar this morning. One addresses the double jeopardy issue. The other is the bail issue. Based on the questions that the Court asked us to consider, I'm going to focus on the those. So as to the Court's questions, the first question, whether the double jeopardy claim that Mr. Hawkins presents on appeal has been waived or forfeited because Hawkins failed to present that claim in district court. It's my position that the claim was clearly raised. The pleadings themselves are a bit less than clear, but it was clearly raised. The pleadings themselves are addressed in the district court. It was addressed as a motion to dismiss based on double jeopardy. Within the pleadings themselves, he addresses both the what he perceives as the prosecutorial misconduct and also what he believes, perceives as the misconduct on behalf of the agent. So it's our position that it was clearly raised in the district court. Kennedy. Counsel, from my perspective, let's assume for a moment that you're right. It was properly raised. What I'm struggling with is the issue of whether there is evidence to show that the government intentionally goaded him into seeking a mistrial. Can you help me with that? What evidence is there to that issue? What we have to focus on is what actually occurred during Agent Shelton's testimony. And it's circumstantial, but it is evidence because there's really no other explanation for it. So the first question that we have to address is whether Agent Shelton  is used in the Kennedy case. And because the Kennedy case did not specifically limit it to prosecutorial misconduct, they said government conduct generally. It's our position that Agent Shelton, as the case agent, as the agent who had investigated this from the beginning, prepared for trial, was the case agent at trial, sat with counsel at trial. She was part of the government team. But, counsel, I think I know where you're going to go with that. Basically, whatever she says, the government's bound. But as you well know, the AUSA in this was very surprised about what was said. Apparently, it was just blurted out, volunteered, did not know that that was what was going to be said according to what she said. What do we make of that? Well, I think what is to be made of that is the fact that Agent Shelton did, in fact, sit in on the trial from the very beginning. She watched how the case was progressing. She saw that during the government's second witness, the cooperating co-defendant, Mr. Moore, during his testimony, the government inadvertently opened the door to the admission of some evidence that had previously been not – I'm sorry, not evidence, but opened the door to an affirmative defense of mistake of age that previously had been excluded. So while prior to trial, the government had successfully defeated the motion to present mistake-of-age defense as to counts 1 and 2, during the course of the second witness, based on the government's questions, the district court changed its ruling and said, I am now going to allow a mistake-of-age defense as to counts 1 and 2. So that was a significant change in the government's case. Next, when the complaining witness testified, on cross-examination,  that it was essential for her to convince all of the people that she worked with that she was over the age of 18, and that she, in fact, attempted to convince the cooperating co-defendant, Mr. Moore, that she was over the age of 18, and she also attempted to convince Mr. Hawkins that she was over the age of 18. So now we've got the change in the ruling considering the mistake-of-age defense. We've got the essentially making the case mistake-of-age defense. And so it's our position that Agent Shelton understood that the government's case was not going particularly well. Kennedy. Is Agent Shelton trained in law? Anderson. She is an FBI agent. I don't know what her degree was that got her into the FBI. That's not — wasn't made part of the record below, so I'm not aware of that. Kennedy. Are you — you're asking us to assume that because she's an FBI agent, that she must have been in on the understanding that you needed to say what you need to say, and the government's about. Is that what you're saying? Anderson. Yes, because this is not some arcane or some subtle nuance of the law. This is the Fifth Amendment right to remain silent, which anyone who participates in American society is aware of the Miranda warnings. You have the right to remain silent. Nothing you say can or will be used against you in a court of law. Kennedy. So what was — after the cat was out of the bag, what was your position? What did you ask the judge to do? Anderson. What the judge should have done? Kennedy. No, no. What did you ask the judge to do? Anderson. I was not trial counsel. Kennedy. What did the trial counsel ask the judge to do? Anderson. The — initially, there was some discussion about what was — what they should do. Kennedy. What did the — what did the trial court move the district judge to do? Now, it was discussed. What was the motion asked for? Anderson. Ultimately, the context — Kennedy. Just answer the question. Anderson. The context is necessary here, because when the trial — Kennedy. I've read the briefs. I've read the record. Answer the question, please. Anderson. He said something to the effect of having that in mind, meaning what the testimony. Kennedy. Okay. Anderson. But he's — I say he prefaced that with having that in mind because he was relying on the discussion that had occurred, so he wasn't — Kennedy. Is that what he said? Now, the actual — he could move for anything, the trial court. The judge — the lawyer moved to have the agent testimony stricken. What did the judge rule? Anderson. The judge granted that motion to have the testimony stricken. Kennedy. Did the judge err there? Did he commit error there? Anderson. The lawyer makes a motion, motion granted. Is that error on the judge's part? Kennedy. No, I would say that's not error. That's not error on the judge's part. Anderson. Okay. So, so far, there's no error that hasn't been corrected by the motion to strike. Now, where do you go from there? Kennedy. Well, where we go from there is — is because what the error that the district court judge made was, in my view, the essential promise that said, look, there is no way to unring this bell except to declare a mistrial. There is no way to cure this error. Yes. The district court judge explicitly said there is no way to cure this error except for granting a mistrial. And then after some discussion, the judge said, look, we have spent so much time in this trial. This was going to be your last, I believe, the ninth witness, your last witness. I would like to salvage this trial. How about if we do this? We'll strike the testimony. If there's a conviction, I'll grant a motion for new trial. I — I may. He did say I could. I could grant a motion for new trial. But I could, not I should. But that — I mean, a judge's ability to grant a motion for new trial exists, irrespective of anything that he or she says on the bench. So there was a reason he said that. He — because, I mean, he could grant a motion for new trial regardless. He was not — he was not ruling. He was just pointing out what the law is. But there was a reason that he pointed out the law. You always — you help them out a little bit. You tell them what they can do down the road if there's a real problem. That's not a big deal. Where's the mistake the judge made that we're going to reverse? The mistake that the judge made that we're going to reverse is the mistake that the third judge assigned to this case made well after in not granting the motion to dismiss based on double jeopardy. That's the mistake. But the — at the trial, I'm talking about the trial judge. There was — is there any mistake there that's up here on appeal? It's a government mistake, not a judge mistake. Correct. It's the government's misconduct, the agent's misconduct that brings us here. Okay. But when was that raised? I'm trying to figure out what the trial judge did that was wrong in handling the case where he had it. So our position is the trial judge was wrong when he denied the motion to dismiss based — by retrial based on double jeopardy. And when was that motion made? That was made a year or so later. Okay. So we're not worried about what happened at the trial. What happened — what we're concerned with is a motion on the basis of double jeopardy later on. That's correct. But that is all based on what occurred at the trial. And so what occurred at the trial informs that motion. So we have to address it. At the stage of the — Was there any evidence taken as to — as to the witness and whether or not she had it? It was in collusion with the prosecution. Was there any evidence on that taken? There was not. At the trial level, Mr. Hawkins wanted to cross-examine the agent about what occurred, and the district court judge denied that request. And was that — when was that motion made? That motion was made — see, Mr. Hawkins at that point was representing himself. He made numerous motions — or numerous pleadings surrounding this first one. So the first motion was filed on June 18th of 2013, so that would have been about eight months after the trial. Notice of motion and motion to dismiss for double jeopardy violations. Evidentiary hearing is requested. Okay. The district court made a finding, though, that there was no intentional goading. How can we find that to be clear error? Because the district court judge who made that finding summarily rejected any arguments concerning Agent Shelton. So during the hearing on the motion, when Mr. Hawkins was explicitly asking the judge to cross-examine Agent Shelton, the district court judge said, your beef isn't with So the error is that the court, the district court, didn't even entertain or comprehend that it was a possibility that Agent Shelton would be part of the prosecution team, part of the government team. Scalia. What do you mean by that? There was a collusion? You ask me this question, I'll give this answer? Or is it just that the legal point that you don't have to get the prosecutor into it, you can get this witness into it, and it's the very same thing? Well, we have to understand the question. So we have to understand, too, but I want to get your argument. If I understand correctly, the questions that goes to Agent Shelton would be to try and get Agent Shelton the same as the prosecution, so that you got prosecutorial misconduct by the answer to the question. That's what I assume. It is, but I don't believe you need to have collusion there. I believe that because Agent Shelton was part and parcel of the trial from the beginning, she observed what was occurring, and it is very possible. It's – I don't think it's unreasonable to infer from the record that she did this on purpose. In fact, the district court judge stated that. She said she must have done this on purpose. She – she – what you're saying – what you're arguing is that she is a prosecutor for purposes of double jeopardy, the same as the prosecutor, so it was prosecutorial misconduct would cover her actions alone, regardless. And I would say, yes, regardless, and I would say it's not prosecutorial misconduct, it's government misconduct, because that's the language that the Supreme Court used. It was not governmental misconduct. He – the Supreme Court did not limit it to government attorneys representing the government in a trial in district court. It was just the government generally. So going back to the – what the district court found, though, the district court said the court cannot conclude that the conduct about which defendant complains was designed to cause a mistrial. So you're saying at that point the judge was only talking about the prosecutor? Yes. But is that because that's all that defendant was clearly discussing? I would say that the defendant focused his briefs more on the prosecutor than the agent. However, he did in his briefs complain about what the agent said. And that's laid out in his – let's see. I'm just having – even – I know that he talked about the FBI agent a little bit in his briefs, but I'm having a problem because he either talked about the prosecutor and the FBI agent, in which case when the court said the conduct about which the defendant complains, the court was making a factual finding about both, or he was only talking about the prosecutor, in which case maybe he forfeited the argument about the FBI agent. I'm not sure how to get out of this dilemma. It's my view that it was raised because the government responded to it in its opposition to the motion to dismiss. It says the United States continues to contest any argument that the witness engaged in any deliberate misconduct with respect to her testimony. So it's – So then why shouldn't we understand the district court when it said the conduct about which defendant complains to include the FBI agent? Because when Mr. Hawkins sought to cross-examine the FBI agent about what occurred, the district court specifically said, her intentions aren't relevant. Your attack is against the prosecutor. So he, the district court judge, cut Mr. Hawkins off, didn't even allow him to develop the facts necessary or what Mr. Hawkins found was necessary or wanted to develop in district court. At this point, like I say, he was pro se, so this is a little difficult to parse. But the district court judge clearly was not considering that Agent Shelton, even though it's my view it was raised, the district court judge was focusing solely on the actual government attorneys, the prosecutors, and was not focusing on the possibility that Agent Shelton, who sat throughout this trial, trained FBI agent with 11 years of experience, and as the original district court judge sitting, observing her testimony, said, she must have done this on purpose. Kagan, if he agreed with you, would we need to remand for a factual hearing on this question of what the agent's intent was? How could we just grant relief without there having been such a factual determination, if we're reading this factual determination the way you do? Because it's my view that the record supports a finding that there's no other explanation for it. As when the government attorney set out what he did to prepare for trial, it was very clear. You look at the 302, the witness report. It's very clear what the question and what the intended answer was. At two different sessions of trial prep, one in person and one on the phone, the government had their outline. They said, this is the question I'm going to ask. This is the anticipated answer. But afterward, they filed declarations saying this was an accident, right? Well, afterwards, it was only the government attorney that filed a declaration saying, this is what I was going to ask her. This is what she told me the answer was. The what occurred in the court was a completely a surprise to me. So I will agree that the government was not aware of this, and I believe that the record supports that. However, when you consider Agent Shelton as part of the government team and the prosecutorial team, then her conduct becomes relevant. And irrespective of whether she discussed it with anyone prior, her behavior is still attributable to the government, and the government should be held responsible for that. Any other questions, my colleagues? Thank you for your argument. We'll hear from the other side. Good morning, Your Honors. May it please the Court. Todd Pickles with the United States. With respect to the first question this Court has raised, it's the United States that, in fact, the defendant has waived the argument that's being made before this Court. There's a different antagonist, and there's a different theory with respect to the argument that's now being raised that the agent engaged in misconduct, and that there was a promise made by the district court that was never presented below. As to the argument that was presented below, that the prosecutor engaged in misconduct by intentionally trying to elicit the testimony about the defendant's invocation of his Fifth Amendment, and that the attempt alone was sufficient relying on second-circuit dicta, that's no longer being raised with this Court. Therefore, because the original argument is not being raised and the new argument has been waived, there actually is no argument that's being presented to this Court that would set forth a colorable claim. Why shouldn't we consider the claim that was raised to be a double jeopardy claim based on Kennedy? And he made that argument. He was pro se. He made that claim. He's now making a separate argument in support of the claim, but it's still the same claim. Yes, Your Honor. And not arguing that there was no double jeopardy claim, certainly there was. However, this Court's practice has been that making a general claim is not typically sufficient with respect to the arguments that are raised. And that's the United States has cited some cases in its papers, Cormier and Ankeny. In both of those cases, there were, for example, Fourth Amendment claims raised. And it was only before this Court that a new theory had been presented, and this Court declined to address the new theory. And I think in this case, there's good reason for that. This Court has already asked some questions about the status of the record as it relates to the intention of the special agent. That was not the focus of the argument that was presented below. If you look at the papers that Mr. Hawkins submitted pro se, they focused squarely on the prosecutor. The Court understood that to be the focus. In fact, the Court corrected Mr. Hawkins when he said, well, I need to take evidence as the intentions of the special agent. And in response to that, Mr. Hawkins didn't dispute that, didn't indicate at that point. He conceded the point and then asked to take more evidence as to the prosecutor's intentions. And with that, the Court said, I have a declaration. I've read the record. I don't need anything else. Is there anything else you want to establish? And he conceded there was nothing else. Kennedy. Opposing counsel made the argument this morning, in effect, as I understood it, to concede the fact that Agent Shelton's testimony was an accident as far as the government was concerned, meaning the prosecutors. But she contends instead that Agent Shelton herself was an agent of the government and that we are to judge her conduct independently, I gather, from that of the prosecutor, that we are, I gather, to impute what she did as an intentional goading in such a way as to cause a mistrial. Would you address the issue of whether or not the FBI agent can be considered for these purposes as the, in quotes, government and guilty of government, in quotes,  Yes, Your Honor. Absent evidence of collusion or some sort of action done with the knowledge or participation of the prosecution, actions by an FBI agent do not trigger the narrow exception under Kennedy with respect to double jeopardy. What is your best case in support of that? Your Honor, the Green case out of the Fourth Circuit, and there's a State Supreme Court decision, Kinsler, out of, I believe, the Supreme Court of Kansas. Those are the two cases that have most squarely addressed this very argument. And, in fact, those are the cases that have the most analogous facts. In Green, it was an agent sitting at counsel table. In Kinsler, it was the lead investigator. And both of those situations, in fact, actually, in Kinsler, the district court actually found that the, it was an intentional act to trigger a mistrial. And the Kansas Supreme Court said, be that as it may, we're not imputing or equating a government agent with a prosecutor, that they have different roles. And that's also, Green didn't go into as much detail, but that was the majority's rationale in Green as well. The prosecutor has the role in court of representing the United States. It's the prosecutor's responsibility to determine which witnesses are called, which arguments are to be made. And, in fact, in this case, it's illustrated by the fact that regardless of the intent of the special agent, and I'll get to that in a moment, the prosecutor resisted mistrial at every opportunity. And, therefore, as the representative of the United States who's in that position, it's different. Special Agent Shelton, and just to correct the record, was not at counsel table, but was permitted to be in the courtroom subject to an exclusion order. Regardless of the role of the special agent, they're a witness at the end, and that's what happened here. And as the record makes clear, the answer given was not expected, and, therefore, counsel has conceded there has been no collusion. The issue of the ---- Robertson, one of the things that we are concerned about is our jurisdiction to hear this appeal. Could you give me the government's position on that, please? There is no jurisdiction, Your Honor, with respect to the due process claim because of the ---- Do you mean double jeopardy? Jeopardy. Thank you, Your Honor. The double jeopardy claim because there's no colorable argument presented. And I think ---- You're on the basis of no colorable argument. Yes, Your Honor. I think the new argument that's being made now has been waived. And if the prior argument has not been raised, there's simply no argument for the But even if the current were, regardless of the argument that's now being presented, there's no colorable argument. There's no ---- So your position is that we should dismiss the appeal for lack of jurisdiction? I believe that's the appropriate remedy with respect to that and the new trial motion. Tell us the position of the government, if you would, please, on United States v. Lewis, which is the case we've cited and wanted to have discussed. I remember the case, but I want to know what your view is of how Lewis fits into the situation we have here. Yes, Your Honor. In Lewis, somewhat similar to the facts here, there was no motion for a mistrial made, and therefore, the Court indicated that that would have taken it outside of Kennedy, which required a successful motion for a mistrial. The Court then went on to discuss this Second Circuit dictum in Wallace, in which the Second Circuit indicated, well, if there was an attempt to go to mistrial, that might fall within Kennedy's exception. This Circuit ultimately didn't decide either way because it found that even if that were the case, there was no evidence of an intent to go to mistrial. But it treated it as colorable and had jurisdiction. It was denied on the merits, not dismissed for lack of jurisdiction, right? That's correct, Your Honor. However, in light of that, given where we're at now, years after Lewis, I believe it no longer can be considered colorable, and I think the reason is this, Your Honor. But are you familiar with the Lopez-Avila case that came after Lewis? Yes, Your Honor. And that's still considered the issue to be colorable even after Lewis, right? So why aren't we in the same position as Lopez-Avila? I think in Lopez-Avila, there was a motion for a mistrial. And although it was denied, the facts were different in that here, there was no motion to mistrial. The matter was taken to a jury, and the Court inquired about what the district court did, the trial judge did wrong. And, in fact, there's been no argument that the trial court did anything wrong. It granted the relief that the defendant sought, striking the testimony. When looking at the history of Kennedy versus or Oregon v. Kennedy and the due process clause, the Court's concern has been depriving the defendant out of the ability to take the matter to the jury after it's impaneled. And that's where the Court has found that in this narrow exception, the defendant has been cheated out of the ability to take the matter to jury and to get an acquittal for which double jeopardy would clearly bar retrial. That didn't occur here. The defendant got everything he wanted. He took the matter to jury, believing apparently that the case was going well for the defense. It resulted in a hung jury and, therefore, a mistrial, and we're right back to where the defendant wanted to be. In other words, there's no conviction. And if the Court had made that promise to grant a new trial under this Court's precedent, double jeopardy wouldn't have barred the claim or the reprosecution even then, because a motion for a new trial under Rule 33 does not trigger the double jeopardy of a retrial. In a sense, the defendant wants a very favorable ruling that says I get everything I want, and I'm not going to get a double jeopardy protection, even though had I gotten this promised motion, I wouldn't be in that situation. Kennedy. What is, in your view, what is the closest case to if, as you indicate, that Jones --"I mean, Lewis does not apply." What is the closest case, in your view, of what applies here? You know, the closest case that this Court has addressed, I think, is the Hege decision, and that's one in which there was a witness who testified or introduced evidence that was unexpected to the prosecution. And that the case focused more on whether or not an evidentiary hearing should have been held, and so it's not on all fours. But this case, nonetheless, that's factually the closest case. And once again, in that case, the Court found that there was no evidence of an intent to goad the defendant into seeking a mistrial, and therefore, the narrow exception under Kennedy didn't apply. Sotomayor, that was not considered colorable on appeal? It did, Your Honor. The Court did consider it on the --did consider interlocutory jurisdiction that found on the merits that there was no merit, and therefore, affirmed the district court's decision. And do you think we --I mean, does the government actually care here whether we say we don't have jurisdiction because it's not colorable or we do have jurisdiction, but it loses on the merits? Your Honor, I think as a --procedurally, I think the appropriate remedy would be to dismiss for lack of a colorable claim. Quite honestly, the better result overall would be potentially to have the Court resolve the merits simply because if the defendant now wishes to pursue yet a different argument below and seek the --an evidentiary hearing, the Court would determine at this point that the prosecutor is not part of the --I mean, sorry, the agent is not a prosecutor, or alternatively, that the fact that there was no mistrial motion sought, much less granted, takes it out of Kennedy and doesn't even have to reach this issue of prosecutor versus agent because Kennedy's narrow exception requires a successful motion for mistrial, which didn't occur here. Would we have to disagree with --? The problem we have is if we don't have power to do what would be the better position, we don't have power to do it. So the initial thing we have to find is power to rule. And your argument is we had to --didn't have that power. What you're saying is if you disagree with me, then this is what you'd like to have. Yes, Your Honor. Tell me specifically on this Lewis case, which is the closest case that I found from our circuit. Lewis went ahead and ruled in a very strange way. I would almost think that it's, as I look at it now, is in different eyes than I looked at it the first time I saw it. Do you agree with Lewis that that's the proper way to handle the matter? That is, how would you interpret Lewis in relationship to this case? I think what Lewis did is went ahead and addressed the issue of to what extent it's possible to have Kennedy apply outside of the context of a successful motion for mistrial. And I think at least the reading, my reading of Lewis, is that the Court essentially looked at it in the alternative that even if we were to consider Wallace, the Wallach decision from the Second Circuit, and follow that rationale, it still doesn't matter to the defendant. Because you're suggesting it was an alternative holding that even if we didn't follow Wallach, we wouldn't get to it. We would, even if we followed that, we wouldn't get to it, the case, that case here, that we would, even if Wallach applied, there's no basis here. That's correct, Your Honor. Even if Wallach applied and, therefore, the successful motion for a mistrial was not required to trigger Kennedy, that still the defendant's claim lacks merit. Because, one, there's been a finding by the district court of no intent to go to mistrial. And, second, that there's no – that the prosecutor does not somehow envelop the – an agent when that's – there's no collusion or it's not done with the intent of the prosecutor. But those are both things we would say on the merits, right? So if that's the route we take, we would have jurisdiction, but we would deny the claim on the merits. Correct, Your Honor. I believe that's – in some ways, it collapses upon itself because the jurisdictional question requires a colorable claim, and, therefore, there would have to be some analysis of the nature of the claim. But I think, ultimately, the court could simply define there is no jurisdiction, including because the argument that was made now is waived, and there's no argument raised from below. Mm-hmm. Any other questions, my colleagues? No, that's very helpful. Thank you both for your fine arguments. We appreciate it. They're very helpful. The case just argued is submitted.
judges: Wallace, Smith, Friedland